UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER JAMES HENRICH,

      Plaintiff                    Civil Action No. 19-10675

v.                              HON.  TERRENCE G. BERG
                                U.S. District Judge
                                HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL       U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Walter James Henrich ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Supplemental Security Income under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Docket #15] be GRANTED and that Plaintiff's motion [Docket #12] be DENIED.

-1-

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on February 19, 2016, alleging disability as of October 4, 2013 (Tr. 163).  Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on October 31, 2017 (Tr. 27).  Administrative Law Judge ("ALJ") Lawrence Blatnik presided.  Plaintiff, represented by attorney Brian Christy, testified, as did Vocational Expert ("VE") Heather Benton (Tr. 31-53, 53-59).  On April 26, 2018, ALJ Blatnik found that Plaintiff was not disabled (Tr. 14-22).  On January 2, 2019, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on March 6, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born December 24, 1968, was 49 at the time of the ALJ's determination (Tr. 22).   He completed ninth grade and worked previously as a machine operator-pipe bender and a pipe bender (Tr. 186).  He alleges disability as a result of bipolar disorder, Chronic Obstructive Pulmonary Disease ("COPD"), Irritable Bowel Syndrome ("IBS"), and Post Traumatic Stress Disorder ("PTSD") (Tr. 185).

### A.      Plaintiff's Testimony

Plaintiff offered the following testimony:

He stood 5' 10" and weighed 135 pounds (Tr. 31).  He currently lived with his girlfriend, her 14-year-old daughter, and two other roommates (Tr. 31).  He received food stamps (Tr. 32).  He took a bus or walked for transportation (Tr. 33).  His case manager

drove him to the hearing (Tr. 33). He attended ninth grade but had only completed eighth grade (Tr. 33-34). He had not followed through with attempts to get a GED (Tr. 34). He stopped working in 2013 after experiencing work-related stress resulting in dramatic weight loss and sleeplessness (Tr. 34). More recently, he was fired after one month of employment from a part-time job at Arby's after failing to show up for work multiple times (Tr. 35).

Aside from the psychological problems, Plaintiff experienced chronic shoulder and neck pain with left arm numbness which began after a bike accident several years before the hearing (Tr. 36-37). He experienced modest relief from symptoms with Gabapentin and Neurontin (Tr. 37). He denied medication side effects (Tr. 37). He received a medication review by a psychiatrist around once a month (Tr. 37, 41). He had previously received counseling, albeit on a sporadic basis due to his tendency to forget appointments (Tr. 40).

Plaintiff smoked one pack of cigarettes a day (Tr. 41). Due to COPD, he had tried unsuccessfully to quit (Tr. 41-42). He stopped using alcohol in April, 2013 but used marijuana once a week (Tr. 42). He did not have a medical marijuana card (Tr. 42). Plaintiff disliked big crowds but went to the grocery store twice a month with his girlfriend (Tr. 43). He experienced nighttime sleep disturbances due to anxiety and as a result, slept during the morning (Tr. 43). He was able to care for his personal needs (Tr. 44).

Plaintiff was unable to stand for more than five minutes or walk for more than two city blocks due to back pain (Tr. 44). Sitting in one position for any period of time caused shoulder discomfort (Tr. 45). He was able to lift and carry up to 16 pounds at a time using

both hands (Tr. 45).  He did not experience problems with his hands or fingers (Tr. 46).  He did not perform significant household or yard chores (Tr. 46).  He did not know much about computers but visited the library on occasion (Tr. 47).  He spent most of his waking hours watching television (Tr. 47).  He was able to ride a bike for short distances (Tr. 48).  He opined that he would be unable to hold even an unskilled job requiring even minimal contact with others due to anxiety and depression (Tr. 48).  Food did not "appeal" to him and he had stayed at the same weight range for several years except during a short work stint where he lost weight due to anxiety (Tr. 50).

In response to questioning by his attorney, Plaintiff reported that he experienced depression most days (Tr. 51).  During his stint at Arby's, he experienced difficulty following sandwich-making instructions resulting in a transfer to maintenance duties (Tr. 52).  All of his jobs ended after missed shifts or because he would argue with supervisors or experience other interpersonal problems (Tr. 53).

### B.    Medical Evidence[1]

### 1.  Treating Sources

---

[1]

In an application for SSI, the relevant period is the date of the application through the date of the ALJ's determination. *See Roberts v. Colvin*, 2015 WL 5432388, at *2 (E.D.Mich. July 22, 2015)(*citing Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993))("'proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date'").  Thus, discussion of the records predating Plaintiff's February 19, 2016 application are included for background purposes only.

September, 2013 medical records note Plaintiff's report of diarrhea, heartburn, vomiting, and other gastrointestinal symptoms (Tr. 298). His abdomen appeared soft and non-tender (Tr. 298). May, 2014 records by Keith R. Baker, M.D. note that Plaintiff recently passed out while giving blood (Tr. 262). Dr. Baker noted that Plaintiff appeared well developed and nourished but wheezed due to COPD (Tr. 264). Plaintiff reported diarrhea and ongoing neck and shoulder pain due to a 2008 injury (Tr. 266). Plaintiff denied upper extremity numbness (Tr. 273). Imaging studies of the left shoulder, lumbar spine, and dorsal spine were unremarkable (Tr. 287-289). Plaintiff canceled a scheduled colonoscopy (Tr. 294). Records from the following month by Andrew Scholl, P.A. note Plaintiff's denial of abdominal pain (Tr. 292). He noted that Plaintiff appeared anxious and talked quickly but had an otherwise healthy appearance (Tr. 292).

Psychological intake records from the same month note Plaintiff's report of anger management problems, paranoia, and Obsessive Compulsive Disorder ("OCD") (Tr. 303). He was advised to undergo a combination of therapy and psychotropic medication (Tr. 303). Plaintiff was "hypervigilant" with poor judgment but exhibited spontaneous speech, a logical thought process, and full orientation (Tr. 306-307). Lucia Szu-en Cheng, M.D. prescribed a trial of Risperdal (Tr. 307). The following month, Plaintiff reported better anger control and mood since starting Risperdal (Tr. 308). In October, 2014, he reported that as a result of the stress of his brother's recent death, he missed some medication doses (Tr. 313).

In November, 2015, Plaintiff denied significant medical problems other than

musculoskeletal upper extremity pain and COPD (Tr. 344, 357). He was referred for physical therapy but stated that he was not willing to undergo surgery (Tr. 358). December, 2015 physical medical evaluation done in conjunction with voluntary admittance for inpatient psychiatric treatment was unremarkable (Tr. 320). Pulmonary function testing from the same month showed "mild" obstructive ventilatory defect" (Tr. 342). At the time of the admittance, Plaintiff reported that his outpatient psychiatric provider had failed to provide adequate help or medication (Tr. 323). He admitted panic attacks but denied psychosis (Tr. 324). He reported that his father died in February, 2015 (Tr. 324). He appeared fully oriented (Tr. 325). He received diagnoses of depression, anxiety, OCD, a panic disorder, PTSD, and anger management problems (Tr. 325). Plaintiff was discharged after 10 days with an improved mood after a medication adjustment (Tr. 327). He was directed to followup with medication reviews and counseling (Tr. 329).

January, 2016 primary care records note that Plaintiff felt "stable" and was "satisfied with his current regime" (Tr. 337, 354). The same month, he was assigned a case manager (Tr. 386). He reported limited financial resources and that he was previously homeless (Tr. 387). The following month, psychiatrist Priyamvada Nagesh, M.D. prescribed Vistaril, Cymbalta, and Zyprexa (Tr. 399). A May, 2016 imaging study of the spine was essentially unremarkable (Tr. 410). In September, 2016, Plaintiff reported no improvement from physical therapy with continued tingling/numbness of the left arm (Tr. 458, 465). In December, 2016, he noted good results from Gabapentin for neck and shoulder pain (Tr.

444).

In June, 2017, Plaintiff denied depression, anger, or lack of concentration (Tr. 414, 424). He appeared well groomed with good eye contact and judgment (Tr. 414). He denied anxiety but had lowered energy due to riding his bike more often (Tr. 419). Records from the next month note that Plaintiff was not threatening but was "struggling to manage his frustration" (Tr. 436). In October, 2017, Edward Rodriguez, M.D. completed an assessment of Plaintiff's psychological work-related abilities, finding "serious" limitations in persistence, routine, decision-making, pacing, and adaption (Tr. 411). He found that Plaintiff lacked the ability to meet competitive standards in the areas of punctuality, working with others, avoid disturbances resulting from psychological symptomology and had no useful ability to dealing with normal workplace stress, making plans, or following directions (Tr. 411). Dr. Rodriguez found that Plaintiff could travel to unfamiliar places and use public transportation but had no useful ability to interact appropriately with others (Tr. 412).

### 2. Non-Treating Sources

In April, 2016, Rom Kriauciunas, Ph.D. performed a non-examining psychological review of the consultative and treating records, finding that as a result of affective, anxiety-related, personality, and substance addiction disorders, Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 76). He noted Plaintiff's acknowledgment that he was able to walk his dogs, leave the house alone, and shop for 30 minutes at a time (Tr. 77).

In May, 2016, Mohammed Ali Khaleel, D.O. performed a consultative examination, noting Plaintiff's report of shortness of breath after walking 50 feet but no hospitalizations or emergency treatment in the past year (Tr. 402). Plaintiff reported that he could walk slowly and lift 10 pounds without problems (Tr. 402). Dr. Khaleel, noted a "weird affect" but a normal gait and full orientation (Tr. 403). Plaintiff demonstrated 5/5 muscle strength in all extremities and a full range of motion in all joints (Tr. 403-406). Dr. Khaleel noted that Plaintiff's psychotropic medication included Vistaril, Zyprexa, and Cymbalta (Tr. 406). He recommended a psychiatric evaluation (Tr. 406).

In June, 2016, Alyce Metoyer, D.O. performed a non-examining review of the treating and consultative records pertaining to Plaintiff's condition, finding that he could lift/carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 78, 80). She limited Plaintiff to occasional postural activity except for unlimited balancing (Tr. 78). Due to the condition of COPD, she limited him to work avoiding concentrated exposure to temperature extremes, wetness, humidity, vibration, and hazards and a preclusion on even moderate exposure to airborne hazards (Tr. 80).

In December, 2017, Craig S. Brown, Ed.D. performed a psychological evaluation, noting Plaintiff's report of current psychiatric treatment for bipolar disorder (Tr. 471). Plaintiff reported depression around twice a week and "mild" manic symptoms once a month (Tr. 472, 478). He reported that he had been diagnosed with PTSD after being shot

accidently by a babysitter at the age of five, catching his hand in a printing press as a young adult, and a toe injury after being run over by a lawn mower (Tr. 472). He reported difficulty controlling his anger with a history of assault, paranoia, and OCD (Tr. 472). Plaintiff reported that he was placed in special education classes and had to repeat third grade (Tr. 474). He denied current alcohol use but reported frequent marijuana use (Tr. 475). He reported that he slept about seven hours a day, watched television, and shopped for groceries (Tr. 475). Dr. Brown noted that Plaintiff exhibited a normal stream of mental activity (Tr. 477, 481). Plaintiff admitted to suicidal ideation but denied attempts (Tr. 477). Dr. Brown assessed Plaintiff's work-related psychological limitation to be (at most) mild (Tr. 484-485).

### C.   Vocational Expert Testimony

VE Heather Benton classified Plaintiff's former work as a bending machine operator as exertionally medium and semiskilled[2] (Tr. 55). The ALJ posed the following question to the VE, describing an individual of Plaintiff's age, education, and work background:

[A]ssume we have an individual who can lift or carry 20 pounds occasionally,

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. The VE originally testified that the maintenance work was actually performed at the light level then corrected himself (Tr. 1110-1118). Plaintiff testified that the maintenance job was performed at the sedentary level (Tr. 1110).

> 10 pounds frequently.  Let's assume in an eight-hour workday, he can sit, stand, or walk all for at least six hours, but would require the ability to change positions about every 30 to 45 minutes for a brief period . . . three to five minutes at a time.  And would be able to continue working . . . despite the position changes.  He could occasionally climb ladders, scaffolds, ramps, and stairs as well as occasionally stoop, kneel, crouch, and crawl.  Could tolerate occasional exposure to extreme cold or heat, humidity, wetness, vibration, moving mechanical parts, unprotected heights, and rough even slippery or obstructed terrain.  He would need to avoid concentrated exposure to fumes, odors, dust, gases, and pulmonary irritants.  He could perform simple, routine, and repetitive tasks, work that requires only brief superficial contact with the public and work that does not involve frequent significant changes or adaptions, and that allows for more relaxed standards regarding socially acceptable behavior (Tr. 55-56).

The VE found the above restrictions would preclude Plaintiff's past relevant work but would allow for the unskilled, exertionally light  work of a packager (80,000 positions in the national economy); production worker (80,000); and inspector (30,000) (Tr. 56).  She testified that if the original restrictions were amended to restrict the individual to only sedentary work, the individual could perform the work of material handler (40,000); production worker (30,000); and hand packager (20,000) (Tr. 57).

The VE stated that if the same individual required unscheduled work breaks for more than 25 percent of the workday due to the effects of pain and concentrational problems, or, was absent from work four or more times a month, all competitive work would be eliminated (Tr. 57-58).  The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*")  except for her findings regarding position changes, time off task, and absenteeism which were based on her own education and experience (Tr. 58).  She reported that her job testimony was also based on *Occupational*

*Employment Quarterly* ("*OEQ*") (Tr. 59).

### D. The ALJ's Decision

Citing the medical records, ALJ Blatnik found that Plaintiff experienced the severe impairments of "degenerative disc disease [], osteoarthritis [], COPD, Irritable Bowel Disease ("IBD"), a bipolar disorder, an anxiety disorder, PTSD, an antisocial personality disorder, OCD, and a history of substance abuse" but that none of the conditions met or medically equaled the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). As to the mental impairments, the ALJ found that Plaintiff experienced only mild limitation in understanding, remembering, or applying information and caring for himself but moderate limitation in interacting with others, and in concentration, persistence, or pace (Tr. 18). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [H]e requires the ability to change position every 30 to 45 minutes for three to five minutes at a time. He can occasionally climb ladders, scaffolds, ramps and stairs; and can occasionally stoop, kneel, crouch, and crawl. He can tolerate occasional exposure to humidity, wetness, vibration, moving mechanical parts, unprotected heights, extreme heat or cold, and rough, uneven, slippery, or obstructed terrain. He must avoid concentrated exposure to fumes, odors, dusts, gases, and pulmonary irritants. He can perform simple, routine, and repetitive tasks; and work that requires only brief superficial public contact; does not involve frequent significant changes or adaptations; and allows more relaxed standards regarding socially acceptable behavior (Tr. 18-19).

Citing the VE's findings, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform the unskilled work of a packer, production worker, and inspector (Tr. 22, 56).

The ALJ discounted Plaintiff's allegations of disability.   As to the physical conditions, the ALJ cited unremarkable imaging studies of the shoulder and neck (Tr. 19). He noted that despite a diagnosis of COPD, the condition was mild (Tr. 20).   The ALJ noted that Plaintiff went for an entire year without treatment for IBD (Tr. 20).

As to the psychological conditions, the ALJ acknowledged a nine-day December, 2015 inpatient treatment but that records following release show that the condition of depression was "much improved" (Tr. 20).   He cited Dr. Brown's post-hearing mental assessment that Plaintiff's mild to moderate psychological problems were not work preclusive (Tr. 21).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of*

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).    However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to

consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

In his sole argument for remand, Plaintiff contends that the ALJ's rejection of treating psychiatrist Dr. Rodriguez's October, 2017 assessment of the work-related psychological limitations did not meet the articulation standards for rejecting a treating physician's opinion.  ECF No. 12, PageID.525 (citing SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).[3]

---

[3]

The Social Security Administration rescinded SSR 96-2p on March 27, 2017. See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017). Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims filed on or after March 17, 2017." Hancock v. Commissioner of Social Security, 2017 WL 2838237, at *8 (W.D. Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)). Because current Plaintiff filed his claim well before March 17, 2017, SSR 96-2p applies.

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)). In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that s/he supplies "good reasons" for doing so. *Wilson*, at 547,; § 404.1527(c); SSR 96–2p at *5. In declining to give less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." Wilson, at 544.

As discussed above, *see* II.B.2., in October, 2017, Dr. Rodriguez completed an assessment of Plaintiff's psychological work-related abilities, finding "serious" limitations in persistence, routine, decision-making, pacing, and adaption and the inability to meet competitive standards or, "no useful ability to function" in the areas of punctuality, working with others, disturbances resulting from psychological symptomology, dealing with normal workplace stress, making plans, or following directions (Tr. 411). Dr.

Rodriguez also found that Plaintiff had no useful ability to interact appropriately with others (Tr. 412).  In recounting Dr. Rodriguez's assessment, the ALJ acknowledged in effect that  the stated limitations, if credited, would preclude all competitive employment (Tr. 20).  However, the ALJ rejected the assessment as "unreasonably restrictive,"  "not supported by the record," and "inconsistent with the medical evidence" (Tr. 20).

The ALJ's rationale for rejecting Dr. Rodriguez's assessment, while fairly succinct, satisfies the treating physician rule.  The ALJ's finding that Dr. Rodriguez's assessment is not supported by the record is supported by the records created beginning in the month before Plaintiff's application and during the relevant period.  The ALJ noted that in January, 2016, Plaintiff's mental state was "much improved" with medication (Tr. 20). Records from August, 2016 note that Plaintiff was "struggling to manage his frustration" but was not threatening (Tr. 436).  Notes from the following month note that a medication adjustment made him less angry (Tr. 431).  In October, 2016, Plaintiff denied depression, excessive anger, and reported improved control of anxiety (Tr. 424).  In March, 2017, Plaintiff denied depression, excessive anger, and sleep disturbances (Tr. 419).  He exhibited a normal mood (Tr. 419).  In June, 2017, Plaintiff denied depression, anger, or lack of concentration and exhibited good judgment and good grooming (Tr. 414 ).  Plaintiff denied anxiety and reported that he was riding his bike more often (Tr. 419). The ALJ's rejection of Dr. Rodriguez's October, 2017 opinion that Plaintiff was unable to meet competitive standards in six areas of functioning and had no useful ability in six others is contradicted

by the psychiatrist's own records showing that Plaintiff was able to control his temper, enjoy good relations with his girlfriend and her daughter, and did not experience depression.

The non-examining and consultative psychological records likewise support the ALJ's rejection of Dr. Rodriguez's opinion (Tr. 20-21).  In April, 2016, Dr. Kriauciunas found that the treating records did not support a finding of more than moderate psychological limitation (Tr. 76-77).  In December, 2017, Dr. Browne observed a normal stream of mental activity despite Plaintiff's history of mental health problems (Tr. 477, 481).  Plaintiff reported that he was able to sleep for a total of seven hours in a 24-hour period and could shop for groceries (Tr. 475).  Standing alone, Plaintiff's ability to interact successfully with his girlfriend and roommates; shop; and leave the house for bike rides undermines Dr. Rodriguez's finding that Plaintiff had "no useful ability to function" in the areas of interacting appropriately with the general public and maintaining socially appropriate behavior (Tr. 412).  Because the ALJ's rejection of Dr. Rodriguez's assessment is amply supported by the record and adequately articulated, a remand is not warranted.

In closing, the recommendation to uphold the ALJ's findings should not be read to trivialize Plaintiff's personal losses or financial concerns.  However, because the non-disability determination is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

-17-

## VI.  CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Docket #15] be GRANTED and that Plaintiff's motion [Docket #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

-18-

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Dated: January 21, 2020                    s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on January 21, 2020 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants January 21, 2020.

                                           s/Carolyn M. Ciesla
                                           Case Manager for the
                                           Honorable R. Steven Whalen